NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DINA PRIOVOLOS COLONIAS, : | |
| : | Civil Action No. 11-5275 (SRC) |
| Plaintiff, : | |
| : | OPINION |
| v. : | |
| : | |
| HOFFMANN-LA ROCHE INC., : | |
| : | |
| Defendant. : | |

**CHESLER**, District Judge

　　This matter comes before the Court upon the motion by Defendant Hoffmann-La Roche Inc. ("Roche" or "Defendant") for summary judgment [docket entry 12]. A briefing schedule set by the Court's January 18, 2012 Order required Plaintiff Dina Priovolos Colonias ("Plaintiff" or "Colonias") to submit any and all opposition to the motion on or before March 6, 2012, yet to date, Plaintiff has not opposed the motion. The Court therefore proceeds to adjudicate the motion for summary judgment as unopposed. It has considered Defendant's submissions and, pursuant to Federal Rule of Civil Procedure 78, has opted to rule without oral argument. For the reasons discussed below, this Court grants Defendant's motion.

**I.　FACTS**

　　This is an action for allegedly improper termination of Plaintiff's long-term disability ("LTD") benefits under Defendant Roche's Long-Term Disability Plan (the "Plan"), an employee

welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. In brief, the pertinent facts are as follows:

Colonias was employed by Roche in 1999 when she was diagnosed with a herniated lumbar disc. On January 26, 2000, Colonias was approved for LTD benefits under the Plan, effective November 3, 1999. In relevant part, the Plan deems an employee eligible for Plan benefits when that employee becomes "Totally Disabled as defined in Article 4.2 as a result of Injury or Sickness" and remains so continuously during the "Elimination Period," a defined time period following inception of the disability during which benefits are not payable. (Plan, Art. II, § 2.8 & Art. IV, § 4.1.) The standard for what constitutes "Totally Disabled" status depends on when the employee seeks LTD benefits in relation to the "Elimination Period." In the first 24 months following the Elimination Period, "Totally Disabled" means that the employee is completely unable to engage in an occupation that would pay him at least 80% of the employee's base pay. (Plan, Art. IV, § 4.2.) In the time period thereafter, that is, commencing 24 months after the end of the Elimination Period, the employee is "Totally Disabled" if he is "completely unable to perform the material duties of any occupation for which he is or could become reasonably qualified by training, education or experience . . . ." (Id.) Thus, the standard for initially establishing eligibility for LTD benefits under the Plan is more lenient than the standard for maintaining those benefits more than two years after the onset of the disabling condition and the commencement of LTD benefits.

The Plan authorizes review of an employee's continuing eligibility for LTD benefits. It provides that a person receiving LTD benefits "may be required periodically to undergo a medical examination . . . and/or submit evidence of continued Total Disability . . . ." (Plan, Art.

2

IV, § 4.4(b).)  In July 2009, the Plan administrator, Disability Management Alternatives, LLC ("DMA")[1] undertook a review of Plaintiff's status to determine if she met the standard of Totally Disabled.  The applicable standard at the time was the stricter of the two set forth above.  DMA determined that she did not meet that standard.  In its July 28, 2009 letter informing Colonias she was no longer eligible for LTD benefits, DMA cited four factors in support of its determination:

(1) an October 14, 2008 statement from Plaintiff's attending physician noting Colonias was capable of sedentary work at that time;

(2) surveillance of Plaintiff at her residence for eight hours on June 19, 2009, during which Colonias was observed doing yard work, dragging garbage cans and recycling cans into the garage and engaging in other activities which appeared to be strenuous;

(3) the Functional Capacity Evaluation of July 9, 2009, which reported that Colonias was capable of sustaining a light level of work for eight hours a day and 40 hours a week, basing this conclusion on a battery of tests including Plaintiff's ability to sit, stand, climb stairs, engage in frequent walking, and push and pull certain weights, among others; and

(4) a Vocational Review, completed on July 17, 2009, assessing Plaintiff's education and experience.

Colonias appealed DMA's determination.  DMA submitted Plaintiff's medical records for review by a medical consultant, a board certified orthopedic surgeon, who opined that Colonias would be capable of performing at least light level work.  On March 22, 2010, DMA affirmed the

---

[1] Roche and DMA entered into an Administrative Services Agreement, effective January 1, 2004, pursuant to which Roche, the Plan sponsor, delegated to DMA all responsibility for claim determinations and appeals under the Plan.  The Administrative Services Agreement provides that Roche remains the Plan fiduciary under ERISA.

discontinuation of Plaintiff's LTD benefits, concluding she did not satisfy the Plan's standard. In support of this decision, it cited the medical consultant's opinion, as well as the July 9, 2009 Functional Capacity Evaluation and the July 17, 2009 Vocational Review.

Plaintiff initiated this lawsuit in state court on or about July 14, 2011 challenging her LTD benefits termination under a breach of contract theory. Defendant thereafter removed the case to federal court based on complete preemption under ERISA. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under a question of federal law.[2]

## II. DISCUSSION

### A. Summary Judgment Standard

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477

---

[2] For reasons the Court will explain below, Plaintiff's claim, though pled as a breach of contract claim, must be construed to plead for relief under ERISA § 502(a)(1)(B).

U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed.R.Civ.P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

**B.      Analysis**

The Court begins by noting that although Plaintiff's Complaint seeks relief under a breach of contract theory, her instant legal challenge to the denial of LTD benefits under her employer-sponsored welfare plan must be construed by the Court as a claim to recover unpaid benefits pursuant to ERISA § 502(a)(1)(B). See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62–63 (1987) (holding that a suit by a beneficiary to recover benefits under an ERISA-governed plan "falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes."). ERISA § 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  ERISA preemption of state law causes of action is well-established.  See Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004).  The Supreme Court has held that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Id.  Suits brought by participants or beneficiaries of ERISA plans concerning matters that "relate to" those plans are governed by the cause of action provided by ERISA § 502(a). Id. at 208-09.  The term "relate to," in the context of ERISA's preemption provision, means that the claim "has a connection with or reference to" an ERISA plan. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983).  In this lawsuit, Plaintiff claims that she was improperly denied LTD benefits to which she was entitled under the Plan. Thus, it is clear that her claim "relates to" an ERISA plan.

The standard by which the Court must review an ERISA claim for the allegedly improper denial of benefits pursuant to an ERISA plan depends on the authority granted to the claims administrator by the governing welfare benefit plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In this case, the Plan and, by extension, the Administrative Services Agreement between Roche and DMA grant the claims administrator discretion to interpret and implement the Plan. The Plan states:

> [T]he Board has delegated to the Claims Administrator full authority to administer, interpret and determine benefit eligibility under the Plan as they pertain to claims for benefits (including, but not limited to, handle initial claims determinations, claims review at periodic intervals, appeals, establish committees to handle such claims and/or appeals and other services related to claims for benefits under the Plan.)

(Plan, Art. VIII, § 8.1.) The Administrative Services Agreement likewise vests this discretionary authority with claims administrator DMA:

> In determining all claims and appeals DMA, LLC shall have the exclusive right to exercise discretionary authority to determine all matters of fact or interpretation relating to the administration of the Plan, including questions of eligibility, interpretation of Plan provisions, and any other matters involving the terms of the Plan.

(Administrative Services Agreement, Art. VI, B.) It is well-settled that in such situations, where the administrator has discretionary authority to make benefits decisions, the standard of review is the highly deferential "arbitrary and capricious standard." Funk v. CIGNA Group Ins., 648 F.3d 182, 190 (3d Cir. 2011). The United States Court of Appeals has defined the task of the reviewing court as follows:

> We review a challenge by a participant to a termination of benefits under ERISA § 502(a)(1)(B) under an arbitrary and capricious standard where, as here, the plan grants the administrator discretionary authority to determine eligibility

> for benefits. An administrator's decision is arbitrary and
> capricious if it is without reason, unsupported by
> substantial evidence or erroneous as a matter of law.

Miller v. Am. Airlines, Inc., 632 F.3d 837, 844-845 (3d Cir. 2011) (citations omitted). "A decision is supported by 'substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision.'" Courson v. Bert Bell NFL Player Retirement Plan, 214 F.3d 136, 142 (3d Cir. 2000) (quoting Daniels v. Anchor Hocking Corp., 758 F.Supp. 326, 331 (W.D. Pa.1991)). In other words, a court reviewing a plan administrator's interpretation of a plan under the arbitrary and capricious standard should not disturb the administrator's decision unless it is unreasonable. Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir.1997).

Defendant has presented sufficient evidence to demonstrate that no reasonable factfinder could conclude that the decision of DMA to discontinue Plaintiff's LTD benefits was arbitrary and capricious. The record shows that DMA's appeals unit supported its conclusion that Colonias was not "Totally Disabled," as defined by the Plan, with substantial evidence. Its March 22, 2010 letter upholding the determination to discontinue LTD benefits cited the Functional Capacity Evaluation, the Vocational Review and the opinion of an orthopedic surgeon consulted by DMA as grounds for finding that Colonias was, as of her 2009 re-evaluation, ineligible for LTD benefits. This evidence, as discussed in more detail above, was comprised of assessments that Colonias was capable of performing at least light level work and possessed a college degree and work experience that would enable her to be gainfully employed. The evidence on which the DMA appeals unit relied certainly suffices as adequate, to the reasonable mind, to support the administrator's conclusion that Colonias was *not* "completely unable to perform the material duties of any occupation for which [she] is or could become reasonably qualified by training,

education or experience," that is, that she did not meet the applicable standard of "Totally Disabled" under the Plan.  Defendant, in short, has established that Plaintiff could not, as a matter of law, prove that DMA's determination that she was ineligible for LTD benefits as of July 2009 was arbitrary and capricious.

Plaintiff, having failed to oppose the motion for summary judgment, adduces no evidence that would raise a genuine issue of fact as to whether her LTD benefits were improperly terminated.  Assuming Plaintiff might argue that DMA disregarded evidence she submitted in connection with her appeal demonstrating that the Social Security Administration and Workers' Compensation Court had both found her to be disabled, such an argument would be completely unavailing to defeat this motion for summary judgment.  There is no indication that those determinations were based on the same standard of disability applicable under the Plan, nor has Plaintiff presented any authority that would bind the Plan to such determinations. Cf. Kunstenaar v. Conn. Gen. Life Ins. Co., 902 F.2d 181, 184 (2d Cir. 1990) (holding that definition of disability under other benefit schemes, such as social security or workers' compensation, are not binding in a case for benefits under ERISA plan, which itself contains the applicable definition of disability); Pokol v. E.I. duPont de Nemours and Co., Inc., 963 F. Supp. 1361, 1379-80 (D.N.J. 1997) (holding that social security board's determination that plaintiff was disabled and therefore eligible for social security benefits was not binding on ERISA plan administrator regarding eligibility for benefits under the plan).

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment. An appropriate form of order will be filed together with this Opinion.

s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: March 29, 2012